**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**GREGORY BAILEY (#21886)**                                           **CIVIL ACTION**

**VERSUS**

**E.B.R. PARISH PRISON, ET AL.**                                     **NO. 12-0224-JJB-RLB**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 25, 2014.

　

　　　　　　　　　　　　　　　　　　　　　**RICHARD L. BOURGEOIS, JR.**
　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GREGORY BAILEY (#21886)                                   CIVIL ACTION

VERSUS

E.B.R. PARISH PRISON, ET AL.                              NO. 12-0224-JJB-RLB

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the cross-motions for summary judgment of the plaintiff and defendant Dennis Grimes (Rec. Docs. 54 and 91).

The *pro se* plaintiff, an inmate previously confined at the East Baton Rouge Parish Prison ("EBRPP"), Baton Rouge, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against EBRPP, Warden Dennis Grimes, the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Judge Tony Marabella and Dr. Vincent Leggio, complaining that the defendants violated his constitutional rights through deliberate indifference to his serious medical needs while he was confined at that facility, specifically through a failure to provide him with appropriate dental care.[1] Pursuant to previous Ruling (Rec. Doc. 51), the Court has dismissed the plaintiff's claims asserted against EBRPP, the East Baton Rouge Parish Prison, the Nineteenth Judicial District Court and Judge Tony Marabella, and has declined the exercise of supplemental jurisdiction over the plaintiff's state law claims.

---

1. Defendant Vincent Leggio has recently been served and has filed a separate Motion to Dismiss which is predicated upon the plaintiff's alleged failure to effect timely service of process in accordance with Rule 4(m) of the Federal Rules of Civil Procedure. *See* Rec. Doc. 107. The Court will address Dr. Leggio's Motion to Dismiss in a separate Magistrate Judge's Report.

The plaintiff now moves for summary judgment relying upon the pleadings, a memorandum filed in connection therewith, an excerpt from the prison rulebook, and copies of administrative grievances purportedly submitted by him to prison officials.

Defendant Grimes moves for summary judgment relying upon the pleadings, a Statement of Uncontested Material Facts, a copy of a transcript of the plaintiff's deposition testimony, a copy of the plaintiff's medical records at EPRPP and the Pine Prairie Correctional Center in Pine Prairie, Louisiana ("PPCC"), a copy of EBRPP Policy No. ADM.-D.500 (relative to the "Inmate Grievance Procedure"), a copy of the EBRPP "Inmate Rules and Regulations," and the affidavits of EBRPP Health Care Manager Linda Ottesen, PPCC Warden Terry Hines, and defendants Dennis Grimes and Vincent Leggio.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v.*

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, as amended, the plaintiff alleges that in October, 2010, he was confined at the Pine Prairie Correctional Center, a facility to which he had been temporarily transferred from EBRPP while awaiting trial on criminal charges pending in the Nineteenth Judicial District Court for the Parish of East Baton Rouge.  He alleges that on October 20, 2010, he broke one of his teeth at PPCC and that two adjacent teeth became abscessed.  The plaintiff requested dental treatment at the Pine Prairie facility but he asserts that he was made to wait nine months by EBRPP officials before being transferred back to EBRPP, and then had to wait two months more before seeing a dentist at EBRPP.  According to the plaintiff, the Pine Prairie facility had an available dentist, but the Warden at EBRPP, defendant Dennis Grimes, refused to authorize payment for treatment at PPCC.  The plaintiff asserts that the dentist at EBRPP, defendant Vincent Leggio, attempted twice to extract the plaintiff's teeth but was unable to do so.  According to the plaintiff, Dr. Leggio thereafter provided the plaintiff with penicillin, ibuprofen and antibiotics and informed the plaintiff that a referral would be made to a dental surgeon and

that the plaintiff would be placed on a list to be taken to an outside facility. The plaintiff complains, however, that the medication provided by Dr. Leggio did not work and instead caused adverse side effects, and that the outside facilities to which he was referred to be taken were either unavailable or did not offer the services needed. When the plaintiff asked Dr. Leggio about the delay in treatment, defendant Leggio allegedly responded that Warden Grimes needed to authorize any outside treatment and, later, that defendant Grimes had stated to defendant Leggio that the prison was "out of money."

A jail official's treatment of a pretrial detainee is governed by the substantive protections of the Due Process Clause of the Fourteenth Amendment, which provision protects the detainee's right to be free from punishment prior to an adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979). In this context, the violation of a detainee's interest in bodily integrity, through the denial of a basic human need such as reasonable medical care, can amount to punishment under the Due Process Clause. *Partridge v. Two Unknown Police Officers of the City of Houston*, 791 F.2d 1182, 1186-87 (5th Cir. 1986). The appropriate standard to apply in analyzing a constitutional challenge by a pretrial detainee depends upon whether the constitutional challenge is an attack on a condition of confinement or a complaint about an episodic act or omission. *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996). A conditions of confinement case is a constitutional attack on the "general conditions, practices, rules, or restrictions of pretrial confinement." *Id.* In such cases, the harm is seen to be caused by the condition or policy itself. This is true, for example, where inadequate medical care, *as a whole*, results in miserable conditions of confinement. *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997). The assumption in such cases is that the policy or practice is intentional and, therefore, the pertinent inquiry is whether the policy or practice in question is "reasonably related to a

legitimate governmental purpose." *Hare v. City of Corinth, supra*, 74 F.3d at 640, 644-45. Supervisory liability may exist in this context "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (internal quotation marks omitted).

In contrast to the foregoing, if the prisoner is complaining of one or more particular acts or omissions by prison officials, the claim is characterized as an "episodic act or omission" case. *Hare v. City of Corinth, supra*, 74 F.3d at 645. An episodic case is presented when an independent actor or actors has been interposed between the detainee and the policy or practice of the local governmental entity that permitted the harm. *Scott v. Moore, supra,* 114 F. 3d at 53. In an episodic act or omission case, the detainee must establish that the official had actual, subjective knowledge of a substantial risk of serious harm but responded with deliberate indifference to the known or perceived risk. *Hare v. City of Corinth, supra*, 74 F.3d at 636.

In initially addressing the plaintiff's claim in the context of a Motion to Dismiss filed by the defendant, the Court noted that the plaintiff's allegations appeared to present elements of both a conditions of confinement claim and an episodic act or omission claim. *See* Rec. Doc. 51. This was because, not only did the plaintiff complain of the actions of particular prison officials, but his allegations regarding (1) long-term interim confinement at a facility other than EBRPP, combined with (2) the alleged refusal to permit medical treatment at that facility, implicated the possibility that a policy or practice existed which effectively violated the plaintiff's constitutional right to adequate medical attention. As discussed hereafter, however, the Court finds, upon consideration of the evidence now submitted in support of the defendant's Motion for Summary Judgment, that there is no showing of any policy or practice, attributable to the

defendant warden, which has resulted in a violation of the plaintiff's constitutional rights. Thus, this case is properly analyzed as an episodic act or omission case and is evaluated under a deliberate indifference standard.

Liability in an official or supervisory capacity rests upon the idea of municipal responsibility and requires a plaintiff to identify (1) an official policy or practice of the municipality, (2) as implemented by a governmental policymaker, and (3) a violation of a constitutional right, the moving force for which was the policy or practice. *Hines v. Henson*, 293 Fed. Appx. 261, 263 (5th Cir. 2008), *citing Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Further, in assessing the official capacity liability of a governmental employee, the Court must determine whether the government official is a policymaker for the local government in the area at issue. *See McMillian v. Monroe County*, *Alabama,* 520 U.S. 781, 785 (1997). In the instant case, although the plaintiff alleged that the defendant warden maintained him at a facility other than EBRPP for over nine months and failed or refused to authorize appropriate dental care during that time, this assertion is not borne out by the record. To the contrary, it appears that, as hereafter explained, when the plaintiff requested dental treatment at the Pine Prairie facility, he was transported back to EBRPP within a relatively short period of time and was provided with such treatment. Moreover, the plaintiff has failed to show that any alleged delays in treatment may be attributed to the defendant warden or to any alleged wrongful policy or, moreover, resulted in a constitutional violation.

It has been recognized that the governing authority of East Baton Rouge Parish is responsible for funding the medical needs of prisoners confined at EBRPP, while the sheriff's office and, by extension, the defendant warden, have the responsibility, within certain parameters, for overseeing or supervising the manner in which such medical care is provided.

This is because the sheriff's office controls the inmates at the jail, the movement of inmates and employees within the facility, and the jail's daily operation and security. *See, e.g., Serigny v. Lafourche Parish Government ex rel. Charlotte Randolph*, 2012 WL 3548029, *3 (E.D. La., Aug. 16, 2012); *Quatroy v. Jefferson Parish Sheriff's Office*, 2009 WL 1380196, *5 (E.D. La., May 14, 2009). As stated in *Serigny, supra:*

> Under Louisiana law, the parish governing authority "is responsible for the expenses of feeding, clothing, and providing medical treatment to the prisoners while the sheriff has the duty of operating the jail and seeing to it that the prisoners are properly cared for, fed and clothed." .... Pursuant to La. Rev. Stat. § 15:703, the parish governing authority is responsible for ensuring that the jail has a health care provider, and for funding the prisoners' medical care – However, the sheriff is responsible for overseeing how the medical care is provided because he controls the inmates of the jail, its employees, and its daily operations.

*Id.* at *3. In the instant case, the Parish of East Baton Rouge has complied with La. R.S. 15:703 by contracting with an independent medical provider to furnish all needed medical and dental treatment to prisoners confined at EBRPP. Specifically, such care is provided by the Prison Medical Services Division of the City of Baton Rouge/Parish of East Baton Rouge Department of Emergency Medical Services, and such care includes the services of licensed health care providers, including a licensed physician and dentist. According to the affidavit of Prison Health Care Manager Linda Ottesen, decisions related to medical and dental care for prisoners at EBRPP are the sole province of Prison Medical Services personnel, and Warden Grimes is "not permitted to intervene in medical decisions" made by the medical providers. *See* Rec. Doc. 91-3. Ms. Ottesen further avers that "[i]f the Prison Medical physicians determine off-site medical care is required, treatment [is] pursued through available options." *Id.* The affidavit of defendant Dr. Vincent Leggio confirms this assertion and further states that "[t]he Warden at the East Baton Rouge Parish Prison is not involved in the decisions of what treatment will be provided and

where it will be provided" to prisoners. *See* Rec. Doc. 91-5. Finally, the affidavit of defendant Grimes asserts that he has "never denied ... medical or dental treatment" to the plaintiff and has never told anyone, including Dr. Leggio and personnel employed by Prison Medical Services and Pine Prairie Correctional Center, that he "would not authorize payment of medical or dental treatment." *See* Rec. Doc. 91-4.

Although the Court initially expressed concern regarding the plaintiff's *alleged* long-term confinement at a transferee facility without access to appropriate dental care, *see* Rec. Doc. 51 at p. 7, this concern has now been alleviated by the presentation of credible un-refuted evidence contradicting the plaintiff's assertions and reflecting, instead, that the plaintiff was transported back to EBRPP when dental treatment was needed. Specifically, the pertinent prison medical and administrative records reflect that, whereas the plaintiff asserted in his Complaint that he sustained injury to a tooth at PPCC in October, 2010, he in fact made no request for dental treatment at PPCC until several months later, on January 6, 2011, at which time he complained of a toothache of only one week's duration. *See* Rec. Doc. 91-9 at p. 20. In addition, the medical records reflect that the plaintiff had undergone a routine physical examination at the Pine Prairie facility on December 22, 2010, and was noted at that time to be in good general health with no noted problems (other than a complaint of "joint pain") and no need for any medical or dental referrals. *See* Rec. Doc. 91-9 at pp. 12-14. Upon making his initial request for dental treatment on January 6, 2011, the plaintiff was then seen by Pine Prairie medical personnel the next day, was noted to have a dental abscess, was provided with a prescription for pain medication and antibiotics at that time, and was issued a referral for a dental appointment. *See id.* at p. 20. The only other medical request made by the plaintiff at PPCC during that interval was on January 25, 2011, when he requested only medication for athletes foot and made

no mention of any dental complaints. *See id.* at p. 21. Although the plaintiff alleges in his Complaint that he then did not receive any treatment for his dental complaints for many months, the records reflect that, in fact, on January 31, 2011, approximately three weeks after his initial report of injury, he was transferred back to EBRPP where he admittedly received medical and dental attention over the course of the next month. During that period, an attempt may have been made by Dr. Leggio to extract the plaintiff's broken tooth, but this attempt, according to the plaintiff, was unsuccessful because Dr. Leggio was unable to sufficiently deaden the plaintiff's gums. *See* Rec. Doc. 91-7 at p. 22.

The plaintiff was returned to the Pine Prairie facility on March 1, 2011, where he was held for a period of approximately 2½ months, until May 13, 2011. During that interval, he was provided with pain medication, antibiotics and penicillin by Pine Prairie personnel. Although the EBRPP Transfer Form indicates that the plaintiff had a dental appointment scheduled at EBRPP for March 22, 2011, *see* Rec. Doc. 91-9 at p. 23, this appointment did not take place, apparently because the EBRPP dentist was ill. *See* Rec. Doc. 91-8 at p. 111. Notwithstanding, the plaintiff did not make any requests for dental treatment at PPCC until April 28, 2011, approximately one month after the scheduled appointment and approximately two months after his arrival at PPCC, at which time he reported chest pains and a toothache. *See* Rec. Doc. 91-9 at p. 19. The pertinent medical record reflects that the plaintiff reported that he was "awaiting dental eval[uation]." *See id.* at p. 10. The plaintiff was then seen by a physician's assistant at Pine Prairie on that date who conferred with a physician by telephone, ordered a prescription for pain medication and antibiotics, and ordered a "dental eval[uation] **soon** at EBRP." *See id.* (emphasis in original). The plaintiff was thereafter seen by a physician at Pine Prairie on May 5, 2011, an EKG was undertaken due to his complaints of chest pain, and he was noted to have an

"improving" dental abscess. *See id.* at p. 9. An order was made at that time to "assure dental follow-up." *See id.* Finally, on May 12, 2011, the plaintiff was seen again by a physician's assistant at Pine Prairie and was noted to be "awaiting dental" follow-up at EBRPP. *See id.* at p. 8. The noted plan for treatment at that time was to "call EBRP, again .... [and] ask if we can have him seen here if they can not see him soon." *Id.* Notwithstanding, the plaintiff was transported back to EBRPP the next day, on May 13, 2011, and the records reflect that he received medical and dental attention at the Baton Rouge facility. Thus, the plaintiff was again transported to EBRPP within approximately two weeks of his written request for dental attention.

The plaintiff thereafter remained at EBRPP except for two brief periods, the first for approximately one week in July, 2011, and the second for approximately one month in August, 2011. The plaintiff conceded in his deposition that he had no reason to question the accuracy of the referenced records. *See* Rec. Doc. 91-7 at p. 17. He further acknowledged that while at EBRPP, he was provided with treatment by the dentist contracted to provide care at that facility, although he asserts that he was not happy with the treatment provided. The plaintiff also stated in his deposition that defendant Dr. Leggio advised the plaintiff that a referral had been made for the plaintiff to be seen at an outside facility, *see id.* at 33, but the plaintiff complains that this referral did not take place and that he continued to suffer pain and discomfort.

Based on the foregoing, the Court finds that the plaintiff has failed to come forward with evidence sufficient to show the existence of a genuine issue of disputed fact regarding the liability of defendant Grimes in connection with the plaintiff's treatment, or lack thereof, at PPCC. In the first place, the plaintiff's assertion that he was made to wait many months without treatment at that facility after breaking a tooth in October, 2010, is clearly without factual

foundation.  As noted above, his first report of injury was not until January 6, 2011 and, in addition to being provided with appropriate medication at that time, he was transported back to EBRPP within three weeks for a dental appointment.  Upon return to PPCC on March 1, 2011, the plaintiff made no request for treatment until almost two months later, on April 28, 2011, and he was again transported back to EBRPP on May 13, 2011, this time within approximately two weeks of his request.  Thus, when the plaintiff made complaints at PPCC, he was provided with medication to ease and treat his symptoms, and he was returned to EBRPP within 2-3 weeks for treatment that was not noted to require emergency care.  Although prison officials may have negligently failed to ensure that the plaintiff was transported back to EBRPP to keep his dental appointment scheduled for March 22, 2011 (or to re-schedule that appointment), such negligence is not a basis for liability under § 1983 and, in any event, there is no evidence suggesting that this failure may be attributed to defendant Grimes.  In fact, there is no indication whatever that defendant Grimes was aware of the plaintiff's alleged dental complaints at that time, was involved in the plaintiff's medical or dental treatment, or was involved in the scheduling of the plaintiff's transfer or return to EBRPP.  *See Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (requiring personal involvement by a prison official in order for their to be a finding of liability under § 1983).  Moreover, the plaintiff did not apparently take any action to notify prison officials when the above-referenced appointment date passed, and it was not until a month later that he submitted a written request for medical treatment and was then seen by medical providers and transported back to EBRPP.

Finally, considering that East Baton Rouge Parish officials have contracted with a Baton Rouge dentist to provide dental care to prisoners awaiting trial in that Parish, it is not unreasonable in the Court's view, and may not be seen to amount to either deliberate

indifference or to an unconstitutional policy or practice *per se*, to routinely return prisoners to EBRPP for treatment (in the absence of a perceived or stated emergency need) instead of authorizing treatment by a dentist employed by another institution and Parish.  Although the plaintiff was apparently unhappy with the delays that resulted from this practice, these delays were not excessive in the instant case, and the plaintiff has failed to show that he suffered substantial harm as a result thereof.  *See Mendoza v. Lynaugh*, *supra,* 989 F.2d at 195 (concluding that a showing of both deliberate indifference and substantial harm is necessary to establish liability based upon a delay in providing medical treatment).  Accordingly, there is no basis for a finding of liability relative to the plaintiff's confinement at PPCC and the alleged failure to authorize treatment at that facility.[2]

Turning to the plaintiff's claim relative to the treatment which he received at EBRPP, the Court concludes that the plaintiff has also failed to produce sufficient evidence to show that defendant Grimes had any direct or personal responsibility for the alleged deficiencies.  In this regard, in order for a prisoner-plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985).  Whether the plaintiff has received the treatment or accommodation which he believes he should have is not the issue.  *Estelle v. Gamble, supra*, 429

---

2. The Court notes that there are several notations in the EBRPP medical records which indicate that Dr. Leggio requested that the plaintiff not be transferred to another facility prior to his teeth being extracted.  *See, e.g.,* Rec. Doc. 91-8 at pp. 32, 120-125.  Although it appears that this request was not honored, there is no factual basis for suggesting that the defendant warden was aware of these requests or had any personal involvement in the disregard of same.

U.S. at 107.  Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action.  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Johnson v. Treen, supra*, 759 F.2d at 1238.  Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference," *Farmer v. Brennan,* 511 U.S. 825, 839-40 (1994), and in order to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  The deliberate indifference standard sets a very high bar: the plaintiff must establish that the defendant "refused to treat [her], ignored [her] complaints, intentionally treated [her] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Johnson v. Treen supra*, 759 F.2d at 1238.  Further, a mere delay in treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Applying this standard, and based on the evidence before the Court, the Court concludes that the defendant's Motion for Summary Judgment should be granted.  It is clear from the voluminous medical records filed in this proceeding that the plaintiff made numerous requests for medical and dental treatment and filed numerous administrative grievances at EBRPP relative to the treatment that he was receiving in connection with his complaints.  It is also clear from these records that the plaintiff was in fact seen and treated on many occasions by health care providers retained by Prison Medical Services at that facility, including nurses, physicians and the defendant dentist, Dr. Vincent Leggio.  In addition to treatment for his dental complaints,

the plaintiff also sought and obtained treatment for other ailments, including chest pain, heartburn, and a persistent itchiness.  In December, 2012, the plaintiff underwent surgery at Earl K. Long Hospital in Baton Rouge, Louisiana ("EKL"), for complaints related to his gallbladder, and was apparently hospitalized for a number days.  *See* Rec. Docs. 96-2 through 96-5.  In addition, it appears that Dr. Leggio made a referral for the plaintiff to receive oral surgery at EKL, but EKL rejected the referral on October 8, 2012, purportedly because "[a]fter careful consideration of the information available this service [could] not be authorized," with the reason for the denial being that the referral "does not meet internal guidelines."  *See* Rec. Doc. 91-8 at p. 31; Rec. Doc. 103 at p. 10.  Finally, in August, 2013, the plaintiff was given a referral for treatment by Hood Dental Clinic, authorized by Linda Ottesen, and several of his teeth were extracted at that time.  *See* Rec. Doc. 91-8 at p. 114; Rec. Doc. 103 at p. 6.  Accordingly, although the plaintiff was clearly unhappy with the care which he received at EBRPP, this complaint appears to relate primarily to the independent medical decisions of health care providers employed at that facility (or at EKL)  and does not implicate any liability on the part of the defendant warden, who clearly acted principally in a supervisory role relative to medical care at the prison.

Finally, the plaintiff has failed to show that the defendant warden was personally aware of the plaintiff's alleged need for treatment and the alleged delays in providing same.  In his deposition, the plaintiff acknowledged that whereas he filed administrative grievances at EBRPP, complaining about his treatment, the grievances were referred to and answered by Prison Medical Services personnel inasmuch as they related to medical treatment at the prison.  The plaintiff further acknowledged in his deposition that he did not appeal the denials of these

grievances to the warden's office, as mandated by the prison administrative process, and so never clearly provided actual notice to the defendant warden. The most that the plaintiff alleges relative to actual notice is that on one occasion, he attempted to speak with the warden about his dental complaints, but the warden turned away, telling the plaintiff to put the complaint in writing. Accordingly, there is very little in the record to reflect personal awareness or personal involvement by the defendant warden in the plaintiff's medical care. Although the plaintiff makes the conclusory assertion that he was told by defendant Leggio and by Health Care Manager Ottesen that the warden needed to approve any outside treatment, this assertion is belied by the plaintiff's medical records, which nowhere indicate such a requirement, by the sworn statements of Ms. Ottesen and of defendants Leggio and Grimes that Prison Medical Services personnel, and not the warden, were responsible for making determinations regarding any need for outside treatment, and by the fact that the plaintiff was in fact referred for outside dental treatment, both at EKL and thereafter at Hood Dental Clinic. Finally, whereas the Fifth Circuit has made clear that a "lack of funds is not a sufficient justification for neglect of a citizen's constitutional rights." *See McCord v. Maggio*, 927 F.2d 844, 847 (5th Cir. 1991), the responsibility for any alleged deficits in funding deficits would appear to fall, not upon the warden but upon the Sheriff of East Baton Rouge or the Parish governing authority. Accordingly, on the record before the Court, the plaintiff has failed to present sufficient evidence to assert a viable claim against defendant Dennis Grimes, and the defendant's Motion for Summary Judgment should therefore be granted, dismissing the plaintiff's claims asserted against this defendant.

Although the plaintiff has filed a cross-motion for summary judgment in this proceed,

Rec. Doc. 54, the plaintiff's motion is not addressed to the substance of the plaintiff's claim but, instead, seeks only to "clear up the issue of exhaustion of administrative remedies." However, considering that defendant Grimes has not asserted lack of administrative exhaustion as an affirmative defense in his Answer and has not clearly argued for dismissal of the plaintiff's claim for this reason,[3] the Court need not make a determination relative to such exhaustion.

## RECOMMENDATION

It is recommended that the plaintiff's Motion for Summary Judgment (Rec. Doc. 54) be denied and that the Motion for Summary Judgment of defendant Dennis Grimes (Rec. Doc. 91) be granted, dismissing the plaintiff's claims asserted against this defendant, with prejudice. It is further recommended that this matter be referred back to the Magistrate Judge for further proceedings in connection with the plaintiff's claim asserted against the remaining defendant, Dr. Vincent Leggio.

Signed in Baton Rouge, Louisiana, on February 25, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE**

---

3. Whereas the defendant has alleged facts suggesting that the plaintiff has failed to exhaust administrative remedies as mandated by 42 U.S.C. § 1997e, specifically because the plaintiff allegedly failed to seek a warden's review in connection with the denials of his various administrative grievances, the defendant has made no legal argument whatever that the provisions of this statute warrant a dismissal of the plaintiff's claim. *See* Rec. Doc. 91. Accordingly, the Court finds that this issue has not been properly presented for review.