UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GREGORY BAILEY (#21886)                                    CIVIL ACTION

VERSUS

E.B.R. PARISH PRISON, ET AL.                               NO. 12-0224-JJB-RLB

RULING

This matter comes before the Court on the Motion for Summary Judgment of the remaining defendant in this case, Dr. Vincent Leggio (R. Doc. 169). This motion is not opposed.[1]

The *pro se* plaintiff, an inmate previously confined at the East Baton Rouge Parish Prison ("EBRPP"), Baton Rouge, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against EBRPP, Warden Dennis Grimes, the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Judge Tony Marabella and Dr. Vincent Leggio, complaining that the defendants violated his constitutional rights through deliberate indifference to his serious medical needs while he was confined at that facility, specifically through a failure to provide him with appropriate dental care. Pursuant to previous Rulings in this case (R. Docs. 51 and 117), the Court has dismissed the plaintiff's claims asserted against EBRPP, the East Baton Rouge Parish Prison, the Nineteenth Judicial District Court, Judge Tony Marabella and Warden Dennis Grimes, and has declined the

---

1. Pursuant to Order dated July 17, 2015 (R. Doc. 172), the Court directed the plaintiff to file any opposition he might have to the defendant's motion for summary judgment within ten (10) days of the date of the Order. A second Order entered on the same date (R. Doc. 173) specifically advised the plaintiff that he should attach any supporting exhibits, affidavits or other evidence to his opposition and should refer with particularity to the evidence supporting his claim or refuting the defendant's assertions. The latter Order further advised the plaintiff that the Court would not scour the record for evidence beneficial to his contentions in this case.

exercise of supplemental jurisdiction over the plaintiff's state law claims.

Defendant Dr. Leggio now moves for summary judgment relying upon the pleadings, a Statement of Uncontested Material Facts, a copy of a transcript of the plaintiff's deposition testimony given on August 8, 2013, copies of the plaintiff's medical records at EPRPP, the Pine Prairie Correctional Center, and the Hood Dental Clinic, a copy of defendant Leggio's certification as an Enrollee with the Louisiana Patient's Compensation Fund, a copy of the Professional Services Agreement entered into between defendant Leggio and the City of Baton Rouge/Parish of East Baton Rouge, and the affidavits of EBRPP Health Care Manager Linda Ottesen and defendant Vincent Leggio.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp., supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

As pertinent to the claim and defendant remaining before the Court, the plaintiff alleges in his Complaint, as amended, that in October, 2010, he was a pretrial detainee confined at the Pine Prairie Correctional Center ("PPCC"), a facility to which he had been temporarily transferred from EBRPP while awaiting trial on criminal charges pending in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. He alleges that on October 20, 2010, he broke one of his teeth at PPCC and that two adjacent teeth became abscessed. The plaintiff requested dental treatment at the Pine Prairie facility but was allegedly made to wait nine months by EBRPP officials before being transported back to EBRPP, and he was then allegedly made to wait two additional months at EBRPP before being seen by the EBRPP dentist, defendant Dr. Leggio. The plaintiff further asserts that Dr. Leggio thereafter attempted, on at least two occasions, to extract some of the plaintiff's teeth but was unable to do so. According to the plaintiff, Dr. Leggio provided the plaintiff with penicillin, ibuprofen and antibiotics and informed the plaintiff that a referral would be made for treatment by a dental surgeon and that the plaintiff would be placed on a list to be taken to an outside facility. The

plaintiff complains, however, that the medication provided by Dr. Leggio did not work, was improperly prescribed and caused adverse side effects, and that the outside facilities to which the plaintiff was referred were either unavailable or did not offer the services needed. When the plaintiff asked Dr. Leggio about the delay in treatment, defendant Leggio allegedly responded that the EBRPP Warden needed to authorize any outside treatment. It appears from documentation filed into the record that in August, 2013, the plaintiff was provided with a referral to an outside facility, and several of the plaintiff's teeth were extracted by the Hood Dental Clinic on August 9, 2013. *See* R. Doc. 169-8 at p. 3.

A claim by a pretrial detainee that jail officials have violated his constitutional rights is governed by the substantive protections of the Due Process Clause of the Fourteenth Amendment, which provision protects the detainee's right to be free from punishment prior to an adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979). In this context, the violation of a detainee's interest in bodily integrity, through the denial of a basic human need such as reasonable medical care, can amount to punishment under the Due Process Clause. *Partridge v. Two Unknown Police Officers of the City of Houston*, 791 F.2d 1182, 1186-87 (5th Cir. 1986). The appropriate standard to apply in analyzing a constitutional challenge by a pretrial detainee depends upon whether the constitutional challenge is seen to be an attack on a condition of confinement or a complaint about an episodic act or omission. *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996). A conditions of confinement case is a constitutional attack on the "general conditions, practices, rules, or restrictions of pretrial confinement," *id.,* and in such cases, the harm is seen to be caused by the policy or practice itself. This is true, for example, where inadequate medical care, *as a whole*, results in deplorable conditions of confinement. *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997). The

assumption in such cases is that the policy or practice is intentional, and the pertinent inquiry is whether the policy or practice in question is "reasonably related to a legitimate governmental purpose." *Hare v. City of Corinth, supra,* 74 F.3d at 640, 644-45. In contrast to the foregoing, if the prisoner is complaining of one or more particular acts or omissions by prison health care providers, the claim is characterized as an "episodic act or omission" case. *Hare v. City of Corinth, supra,* 74 F.3d at 645. An episodic case is presented when an independent actor or actors has been interposed between the detainee and a policy or practice of the local governmental entity that permitted the harm. *Scott v. Moore, supra,* 114 F. 3d at 53. In an episodic act or omission case, the detainee must establish that the prison health care provider responsible for the alleged wrongdoing had actual, subjective knowledge of a substantial risk of serious harm to the plaintiff's health or well-being but responded with deliberate indifference to the known or perceived risk. *Hare v. City of Corinth, supra,* 74 F.3d at 636.

As pertinent to the instant motion, the plaintiff is complaining of the actions of a particular health care provider at EBRPP, Dr. Vincent Leggio. As such, the Court has previously concluded that this claim is properly analyzed as an episodic act or omission claim and is evaluated under a deliberate indifference standard. *See* R. Docs. 133 and 135. Under this standard, in order for a prisoner-plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Johnson v. Treen,* 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble, supra,* 429 U.S. at 107. Nor do negligence, neglect, medical

malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Johnson v. Treen, supra*, 759 F.2d at 1238. Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference," *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994), and in order to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The deliberate indifference standard sets a very high bar: the plaintiff must establish that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Johnson v. Treen supra*, 759 F.2d at 1238. Further, a mere delay in treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Applying the foregoing standard, the Court finds that the plaintiff's claim of deliberate medical indifference asserted against Dr. Leggio should be rejected. Specifically, the Court finds that the plaintiff has failed to present evidence sufficient to overcome the defendant's evidentiary showing in connection with the instant motion. Although the Court initially expressed concern in this case regarding the plaintiff's alleged long-term confinement at a transferee facility in Pine Prairie, Louisiana in 2011, without access to appropriate dental care, *see* R. Doc. 51 at p. 7, it is clear that the defendant dentist had no control over the plaintiff's housing location, which was determined by the warden or his designee at EBRPP, not by the defendant. Further, and in any event, the Court's initial concern has since been alleviated by the presentation of credible un-refuted evidence

contradicting the plaintiff's assertions and reflecting that the plaintiff was routinely transported back to EBRPP in 2011 when dental treatment was requested or scheduled. Specifically, the pertinent prison medical and administrative records reflect that, whereas the plaintiff asserted in his Complaint that he sustained injury to a tooth at PPCC in October, 2010, he in fact made no request for dental treatment at PPCC until several months later, in January, 2011, at which time he complained of a toothache of only one week's duration. *See* R. Doc. 169-10 at p. 20. In addition, the medical records reflect that the plaintiff underwent a routine physical examination at PPCC in December, 2010, and was noted at that time to be in good general health with no noted need for any medical or dental referrals. *See id.* at pp. 12-14. Upon making his initial request for dental treatment on January 6, 2011, the plaintiff was seen by Pine Prairie medical personnel the next day, was noted to have a dental abscess, was provided with a prescription for pain medication and antibiotics, and was issued a referral for a dental appointment. *See id.* at p. 20. The only other medical request made by the plaintiff at PPCC around that time was on January 25, 2011, when he requested only medication for athletes foot and made no mention of any dental complaints. *See id.* at p. 21. Although the plaintiff alleges in his Complaint that he then did not receive any treatment for his dental complaints for many months, the records reflect that, in fact, on January 31, 2011, approximately three weeks after his initial report of injury, he was transferred back to EBRPP where he received medical and dental attention over the course of the next month, including an evaluation of his dental complaints by a nurse on February 6, 2011, *see* R. Doc. 169-5 at pp. 249-250, and at least two appointments with Dr. Leggio, on February 15 and 28, 2011, respectively. *See id.* at p. 125. During that period, an attempt was made by Dr. Leggio to extract the plaintiff's broken tooth, but this attempt, according to the plaintiff, was unsuccessful, allegedly because Dr. Leggio was unable to sufficiently deaden the

plaintiff's gums. *See* R. Doc. 169-4 at p. 23-4. At any rate, it appears that Dr. Leggio prescribed pain medication and antibiotics for the plaintiff in an attempt to reduce and control swelling, entered orders for follow-up care, and recommended that the plaintiff undergo tooth extraction prior to a transfer to another facility. *See* R. Doc. 169-5 at p. 125.

Notwithstanding Dr. Leggio's recommendation, the plaintiff was returned to the Pine Prairie facility on March 1, 2011, where he was held for a period of approximately 2½ months, until May 13, 2011. During that interval, he was provided with pain medication, antibiotics and penicillin by Pine Prairie personnel. Although the EBRPP Transfer Form indicates that the plaintiff had a dental appointment scheduled at EBRPP for March 22, 2011, *see* R. Doc. 169-10 at p. 23, this appointment did not take place, apparently because Dr. Leggio was ill. *See* R. Doc. 169-5 at p. 111. Notwithstanding, the plaintiff did not submit any requests for dental treatment at PPCC until April 28, 2011, approximately one month after his scheduled appointment and approximately two months after his arrival at PPCC. *See* R. Doc. 169-10 at p. 19. The pertinent medical record from that date reflects that the plaintiff reported that he was "awaiting dental eval[uation]." *See id.* at p. 10. The plaintiff was then seen by a physician's assistant at Pine Prairie on that date who conferred with a physician by telephone, ordered a prescription for pain medication and antibiotics, and ordered a "dental eval[uation] *soon* at EBRP." *See id.* (emphasis in original). The plaintiff was thereafter seen by a physician at Pine Prairie on May 5, 2011, an EKG was undertaken due to unrelated complaints of chest pain, and he was noted to have an "improving" dental abscess. *See id.* at p. 9. An order was made at that time to "assure dental follow-up." *See id.* Finally, on May 12, 2011, the plaintiff was seen again by a physician's assistant at Pine Prairie and was noted to be "awaiting dental" follow-up at EBRPP. *See id.* at p. 8. The noted plan for dental treatment at that time was to "call EBRP, again

.... [and] ask if we can have him seen here if they can not see him soon." *Id.* The plaintiff was transported back to EBRPP the next day, on May 13, 2011, and the records reflect that he received medical and dental attention at the Baton Rouge facility. Thus, the plaintiff was again transported to EBRPP within approximately two weeks of his April 28, 2011, written request at PPCC for dental attention.

The plaintiff thereafter remained at EBRPP except for two brief periods, the first for approximately one week in July, 2011, and the second for approximately one month in August, 2011. The medical records generated at EBRPP during the remaining period of the plaintiff's confinement at that facility reflect that he was provided with substantial and continuing medical and dental attention and treatment by Dr. Leggio and other physicians and health care providers. *See generally* R. Doc. 169-5. The plaintiff further conceded in his deposition that he has no basis to dispute the accuracy of the EBRPP medical records, *see* R. Doc. 169-4 at p. 17, which show that he was provided with "multiple medical appointments and dental appointments" at that facility. *See id.* at pp. 41-42. The plaintiff asserts, however, that for the duration of his confinement at EBRPP, he continued to complain to defendant Leggio and other providers, both in person and through written grievances and correspondence, of pain and of a need for appropriate attention to his dental needs, including the extraction of broken and/or abscessed teeth. According to the plaintiff, defendant Leggio failed to take appropriate action to treat the plaintiff's condition, extract the broken/abscessed teeth, provide appropriate medication, or ensure that a referral was made to an outside facility that could provide the necessary treatment. Specifically, the plaintiff asserts that the prescribed medication did not work or had adverse consequences and that he experienced pain and discomfort for a substantial period of time. Whereas the plaintiff acknowledges that Dr. Leggio advised that a

referral had been made for the plaintiff to be seen at an outside facility, *see id.* at 33, the plaintiff complains that this referral did not take place and that he continued to suffer pain and discomfort.

Notwithstanding the plaintiff's contentions, the Court finds, upon a review of the evidence presented by the defendant in support of the instant motion, and in the absence of any argument or contrary showing by the plaintiff, that the plaintiff has failed to show the existence of a genuine issue of disputed fact regarding the liability of defendant Leggio in connection with the plaintiff's dental treatment at EBRPP. To the contrary, the evidence presented by the defendant, including voluminous EBRPP medical records, affidavits and other documentation, supports a finding that the plaintiff's complaints were not ignored and that the defendant did not exhibit deliberate indifference to the plaintiff's serious medical needs. As noted above, the plaintiff's first report of a need for dental treatment was in January, 2011, at PPCC, when he reported an injury to one of his teeth. The plaintiff was then transported back to EBRPP on January 31, 2011, where he was seen and evaluated by Dr. Leggio and provided with medication and appointments for follow-up care. The medical records reflect that, for the duration of the plaintiff's confinement at EBRPP, he made numerous requests for medical and dental treatment and filed numerous administrative grievances relative to the care that he was receiving. These records also reflect, however, that the plaintiff was in fact seen and treated on many occasions by health care providers at that facility, including nurses, physicians and the defendant dentist, Dr. Leggio. In addition to treatment for his dental complaints, the plaintiff sought and obtained treatment for other ailments, including chest pain, heartburn, and persistent itchiness. The records reflect that defendant Leggio routinely prescribed medication for the plaintiff's dental complaints, including medication for pain and antibiotics to reduce and control persistent soreness, swelling and abscesses. On multiple occasions, Dr. Leggio attempted to extract

one or more of the plaintiff's teeth, but the plaintiff resisted these attempts and was unwilling to accept "regular dental injection for giving anesthesia," complaining that the defendant had not sufficiently numbed the plaintiff's mouth and that he still felt pain. *See* R. Docs. 169-5 at p. 120 and 169-7. Finally, in response to the plaintiff's requests for the use of a stronger anaesthetic that was not available at EBRPP, defendant Leggio made a referral for an outside provider to undertake surgical extraction of several of the plaintiff's teeth. *See* R. Doc. 169-7. Although the referral appointment did not immediately occur, it does not appear that the resulting delay is attributable to Dr. Leggio. To the contrary, according to the affidavits of the defendant and the EBRPP Health Care Manager, Linda Ottesen, R. Docs. 169-6 and 169-7, once the referral was made, the defendant was "not involved in the procurement, contracting, scheduling, transporting, or acceptance of the off-site referral, and ha[d] no control over such." Thus, fault does not lie with the defendant merely because the referral was delayed or because it was, at least initially, denied by the referral facility. *See* R. Doc. 169-5 at pp. 31 and 132-33 (reflecting that on October 8, 2012, medical providers with the LSU Health System rejected the referral request by Dr. Leggio and EBRPP because it did not "meet internal guidelines"). According to the affidavit of Linda Ottesen (R. Doc. 169-6), Prison Medical Services "ha[d] no control over whether an outside clinic accept[ed] a referral or when or how many patients they choose to see." Further, when the Earl K. Long Hospital in Baton Rouge, Louisiana, stopped accepting dental referrals for complex extractions for inmates in 2011, "Prison Medical Services contacted multiple providers in attempts to contract for outside care for dental referrals and complex extractions." *Id.* Finally, "[i]n July of 2013, Prison Medical Services was able to contract with dentist, Dr. Andrew Hood to see inmate referrals twice a month" and, pursuant to that contract, was able to schedule the plaintiff for tooth extractions on August 9, 2013. *Id.* While awaiting this

referral, health care providers at EBRPP continued to provide the plaintiff with medication and attention to his complaints. See R. Docs. 169-5, *in toto*, and 169-7. These facts do not support a finding that Dr. Leggio or any other prison personnel at that facility "refused to treat [the plaintiff], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice, supra,* 239 F.3d at 756. Accordingly, there is an insufficient factual basis for concluding that the defendant was deliberately indifferent to the plaintiff's serious medical needs.

In addition to the foregoing, and as noted above, the plaintiff has not submitted any opposition in response to the instant motion, has not presented any argument or authority, and has not directed the Court's attention to documentary evidence on file and in the record that refutes the defendant's assertions or shows that there is a genuine disputed issue of fact regarding whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. Specifically, whereas the Court entered an Order directing the plaintiff to file an opposition to the defendant's motion within ten days and further directed him to attach documentary exhibits to his opposition and to refer thereto with specificity and particularity (R. Docs. 172 and 173), the plaintiff has not come forward and done so within the time allowed. In the context of a motion for summary judgment, it is well-settled that a plaintiff may not rest upon mere allegations or assertions contained in his pleadings in opposing a properly supported motion. *Celotex Corp. v. Catrett, supra,* 477 U.S. at 324. In response to such a motion, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* Stated another way, in order to meet his burden of proof, the party opposing a motion for summary judgment "may not sit on its

hands, complacently relying" on conclusory assertions contained in his pleadings. *Weyant v. Acceptance Insurance Co.*, 917 F.2d 209, 212 (5th Cir. 1990). When a party does not file an opposition to a motion for summary judgment, the Court is permitted to consider the facts presented in support of the motion as undisputed and may grant summary judgment if the facts show that the movant is entitled to judgment in his favor. *See Jegart v. Roman Catholic Church Diocese of Houma - Thibodaux*, 384 Fed. Appx. 398, *2 (5th Cir. 2010). Further, pursuant to Local Rule 56(b) of this Court, the plaintiff's failure to oppose the defendant's motion for summary judgment allows the Court to conclude that all of the facts contained in the defendant's Statement of Uncontested Material Facts are deemed to be admitted. Accordingly, based upon the foregoing and upon the plaintiff's failure in this case to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, the Court concludes that the defendant's motion is well-taken and that the defendant is entitled to summary judgment as a matter of law.

**IT IS ORDERED** that the Motion for Summary Judgment of the remaining defendant in this case, Dr. Vincent Leggio (R. Doc. 169), be and it is hereby **GRANTED**, dismissing the plaintiff's claims asserted against this defendant, with prejudice, and that this action be dismissed. Judgement shall be entered accordingly.

Baton Rouge, Louisiana, this 18th day of August, 2015.

**JAMES J. BRADY**
**UNITED STATES DISTRICT JUDGE**